FILED
SEP 06 2018
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN DIEGO UNIFIED PORT DISTRICT, a public corporation,<br><br>Plaintiff,<br><br>v.<br><br>MONSANTO COMPANY;<br>SOLUTIA INC., and<br>PHARMACIA CORPORATION,<br><br>Defendants. | Case No.: 15cv578-WQH-AGS<br><br>**ORDER** |

HAYES, Judge:

The matter before the Court is San Diego Unified Port District's motion for judgment on the pleadings. (ECF No. 213).

**I.     BACKGROUND**

On March 13, 2015, Plaintiffs San Diego Unified Port District ("Port District") and the City of San Diego (the "City") initiated this action by jointly filing a Complaint against Defendants Monsanto Company, Solutia Inc., and Pharmacia Corporation ("collectively, Monsanto"). (ECF No. 1). On August 3, 2015, the Port District filed a First Amended Complaint ("FAC") against Monsanto, the operative pleading in the Port District's action. (ECF No. 25). The Port District alleged causes of action for public nuisance, equitable indemnity, and purpresture against Monsanto relating to PCB contamination of the San

1  Diego Bay ("the Bay"). *Id.* On September 28, 2016, the Court granted in part and denied
2  in part a motion to dismiss the FAC. The Court granted the motion to dismiss with respect
3  to equitable indemnity and denied the motion to dismiss with respect to public nuisance
4  and purpresture. (ECF No. 81). The Port District is proceeding in this litigation on its
5  public nuisance cause of action and purpresture cause of action.

On April 14, 2017, Monsanto filed its First Amended Answer and Counterclaims. (ECF No. 110).

The Port District filed a motion to strike a number of the affirmative defenses under Federal Rule of Civil Procedure 12(f) and a motion to dismiss the counterclaims. (ECF Nos. 112, 113). On January 30, 2018, the Court issued an Order granting the motion to dismiss the counterclaims for lack of standing and denying the motion to strike the affirmative defenses. (ECF No. 192). The Court concluded that the affirmative defenses challenged in the Rule 12(f) motion "provide[d] fair notice of the defenses and [we]re not otherwise insufficient, redundant, or immaterial." *Id.* at 9.

On April 19, 2018, the Port District filed a motion for partial judgment on the pleadings as to certain affirmative defenses asserted by Monsanto pursuant to Federal Rule of Civil Procedure 12(c). In the alternative, the Port District moves to strike these affirmative defenses as legally insufficient. (ECF No. 213).

On May 14, 2018, Monsanto filed a response in opposition. (ECF No. 220).

On May 21, 2018, the Port District filed a reply. (ECF No. 221).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(f) and 12(c) provide methods by which a party can challenge an affirmative defense in a pleading. Federal Rule of Civil Procedure 12(f) provides that the Court may strike "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The Court may act on its own or "on motion made by a party either before responding to the pleading, or if a response is not allowed, within 21 days after being served with the pleading." Fed. R. Civ. P. 12(f)(2).

Pursuant to Federal Rule of Civil Procedure 12(h)(2)(B), "Failure to . . . state a legal defense to a claim may be raised . . . by a motion under Rule 12(c)." Fed. R. Civ. P. 12(h)(2)(B). Rule 12(c) provides that "After the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is properly granted when there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009) (citing *Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 978–79 (9th Cir. 1999)). The court must "accept all material allegations in the complaint as true and construe them in the light most favorable to [the non-moving party]." *Turner v. Cook*, 362 F.3d 1219, 1225 (9th Cir. 2004). In addressing a Rule 12(c) motion for judgment on the pleadings filed by a defendant, the Ninth Circuit Court of Appeals has stated that "Rule 12(c) is 'functionally identical' to Rule 12(b)(6) and that 'the same standard of review' applies to motions brought under either rule." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011).

## III. DISCUSSION

In this case, the Port District moves under both Rule 12(f) and Rule 12(c). Monsanto filed its First Amended Answer on April 14, 2017. (ECF No. 110). The Court has previously denied a motion under Rule 12(f) by the Port District. (ECF No. 192). To the extent the instant motion is brought under Rule 12(f), the Court finds that it is duplicative and untimely. *See* Fed. R. Civ. P. 12(f)(2). The motion to strike affirmative defenses under Rule 12(f) is denied.

### A. Equitable Affirmative Defenses

The Port District moves for judgment on the pleadings under Rule 12(c) with respect to the following affirmative defenses based on equitable doctrines: estoppel (No. 3); unclean hands (No. 4); waiver (No. 5); laches (No. 6); failure to mitigate (No. 14); and unjust enrichment (No. 16). The Port District contends that "equitable defenses cannot be invoked against a public entity to frustrate important public policies" as a matter of law. (ECF No. 213 at 12). The Port District contends that waiver and estoppel do not apply to

3

15cv578-WQH-AGS

public nuisance or purpresture claims. *Id.* at 13. The Port District contends that "a public entity may not be estopped by the conduct of its officers or employees *absent a showing that it acted in an unconscionable manner*" and a grave injustice would result in the absence of equitable estoppel. *Id.* at 14.

Monsanto contends that it has adequately pled estoppel, unclean hands, waiver, laches, failure to mitigate and unjust enrichment. Monsanto asserts that "[d]espite the Port's representations that it is bringing a representative public nuisance action – for which abatement is the only available remedy – it openly and repeatedly seek damages." (ECF No. 220 at 15–16). Monsanto contends that the applicability of equitable defenses to abatement presents a factual question not suitable for resolution at this time. Monsanto contends that equitable estoppel may apply against a public entity where "'the avoidance of injustice in the particular case justifies any adverse impact on the public interest'" and that this determination requires a fact-intensive inquiry. *Id.* at 17.

California case law provides that the equitable defenses available against a public entity are narrow. In *People v. ConAgra Grocery Prod. Co.*, a California appellate court stated,

> "It is clear, however, that neither the doctrine of estoppel *nor any other equitable principle* may be invoked against a governmental body where it would operate to defeat the effective operation of a policy adopted to protect the public." (*County of San Diego v. California Water & Tel. Co.* (1947) 30 Cal.2d 817, 826, 186 P.2d 124, italics added.)

227 Cal. Rptr. 3d 499, 571–72 (Ct. App. 2017), *reh'g denied* (Dec. 6, 2017), *review denied* (Feb. 14, 2018).[1] Under certain factual circumstances, however, "equitable defenses" can be asserted against a public entity. *See, e.g., City of Long Beach v. Mansell*, 476 P.2d 423,

---

[1] The court in *ConAgra* addressed a representative public nuisance action for abatement. Although the Port District thus far has represented to this Court that it is proceeding on its public nuisance cause of action in a representative capacity, it has asserted that it is entitled to damages related to its nuisance cause of action.

4

448 (Cal. 1970) ("The government may be bound by an equitable estoppel in the same manner as a private party when the elements requisite to such an estoppel against a private party are present and, in the considered view of a court of equity, the injustice which would result from a failure to uphold an estoppel is of sufficient dimension to justify any effect upon public interest or policy which would result from the raising of an estoppel."); *Feduniak v. California Coastal Com.*, 56 Cal. Rptr. 3d 591, 600 (Ct. App. 2007) ("The government is not immune from the doctrine [of equitable estoppel], and it may be applied 'where justice and right require it.' . . . However, it must not be applied if doing so 'would effectively nullify a strong rule of policy, adopted for the benefit of the public....'"). Further, these defenses generally involve questions of fact. *See, e.g., Feduniak*, 56 Cal. Rptr. 3d 591, 601, 617 (Ct. App. 2007) (holding that estoppel and laches are generally questions of fact but may be decided as a matter of law where facts are undisputed); *Golden Gate Water Ski Club v. Cty. of Contra Costa*, 80 Cal. Rptr. 3d 876, 890 (Ct. App. 2008).

In this case, resolution of these affirmative defenses will involve factual determinations. *See Fleming*, 581 F.3d at 925 (holding that judgment on the pleadings is properly granted only when no issue of material fact is in dispute). While equitable defenses are narrow when asserted against a public entity, the Court concludes that it is premature to conclude that these defenses are unavailable as a matter of law based on the pleadings.

### b. Affirmative Defenses Based on Negligence and Comparative Fault

The Port District moves for judgment on the pleadings with respect to the following affirmative defenses based on the Port District's alleged negligence and comparative fault: avoidable consequences (No. 15); comparative negligence (No. 26); comparative fault (No. 27); failure to regulate lessees' activities (No. 53); exercise of due care (No. 55); and the Port District's contribution (No. 80). The Port District contends that the Port District is immune from direct tort liability to Monsanto under the California Torts Claims Act. The Port District contends that these affirmative defenses consequently fail as a matter of law because "no percentage of fault or liability for contamination may be ascribed to a public

entity, and thus the Port District's recovery of abatement costs cannot, consistent with the Government Code, be reduced based on its own negligence or comparative fault." (ECF No. 213 at 16).

Monsanto contends that the Port District's "expansive view of governmental immunity plainly contradicts the letter and spirit of the Claims Act" and that it is entitled to raise affirmative defenses against the Port District. (ECF No. 220 at 19). Monsanto contends that the California Tort Claims Act does not bar nuisance actions against a public entity brought under section 3479 of the California Civil Code. Monsanto contends that even if the Act immunized the Port District from paying damages, "fault would nevertheless be allocated to the Port on the basis of its tortious contribution to pollution in the Bay." *Id.* at 26.

The California Tort Claims Act provides in section 814, "Nothing in this part affects liability based on contract or the right to obtain relief other than money or damages against a public entity or public employee." Cal. Gov. Code. § 814. Further, the California Tort Claims Act provides, "Except as otherwise provided by statute . . . A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person." Cal. Gov. Code § 815(a). The California Supreme Court has determined that section 815 of the Government Code does not bar nuisance actions under section 3479 against public entities:

> We therefore conclude that section 815 of the Government Code does not bar nuisance actions against public entities to the extent such actions are founded on section 3479 of the Civil Code or other statutory provision that may be applicable. Accordingly we hold that the trial court incorrectly dismissed plaintiffs' cause of action for nuisance on the ground that it was precluded by section 815 of the Government Code.

*Nestle v. City of Santa Monica*, 496 P.2d 480, 491 (Cal. 1972); *see also Adobe Lumber, Inc. v. Hellman*, No. CIV.05-1510 WBS PAN, 2008 WL 4539136, at *8–9 (E.D. Cal. Oct. 2, 2008). The Port District requests that this Court depart from the holding of the California Supreme Court in *Nestle* due to the more recent authority in *Eastburn v. Reg'l Fire Protec.*

6

*Auth.*, 80 P.3d 656 (Cal. 2003). In *Eastburn*, the California Supreme Court determined that California Civil Code section 1714 was insufficient to impose direct tort liability on public entities employing emergency dispatchers for failure to respond or delay in responding to a 911 call. *Id.* at 657, 660. The Supreme Court stated,

> [D]irect tort liability of public entities must be based on a specific statute declaring them to be liable, or at least creating some specific duty of care, and not on the general tort provisions of Civil Code section 1714. Otherwise the general rule of immunity for public entities would be largely eroded by the routine application of general tort principles.

*Id.* at 660. By comparison, in *Nestle*, the Supreme Court stated, "'The fact that (the nuisance statutes) are general in language, and do not specifically refer to public entities, does not preclude the application to such entities, because generally worded code sections are applied to governmental bodies if no impairment of sovereign powers would result.'" *Nestle*, 496 P.2d at 489 (internal quotations omitted). The Court concludes that *Nestle* remains controlling precedent that section 3479 provides sufficient statutory authority to support a nuisance claim alleging an injury caused by a public entity.[2] *See also Kempton v. City of Los Angeles*, 81 Cal. Rptr. 3d 852, 855 (Ct. App. 2008) ("Government liability under Government Code section 815 et seq. may be based upon public nuisances per se, and appellants may reasonably amend their complaint to allege an action on this theory."); *Adobe Lumber, Inc. v. Hellman*, No. CIV.05-1510 WBS PAN, 2008 WL 4539136, at *9 ([T]he court declines the City's invitation to depart from clear and binding precedent. Accordingly, because section 815 does not immunize the City from plaintiff's nuisance claims, the court will deny the City's motion to dismiss those claims pursuant to that section."). Further, the Port District fails to provide an adequate basis for its assertion that the California Tort Claims Act operates to bar Monsanto from asserting affirmative

---

[2] In a prior Order, this Court concluded that Monsanto failed to sufficiently plead any injury caused by the Port District and lacked standing to bring counterclaims for negligence, negligence per se, purpresture, and violations of the public trust doctrine. (ECF No. 192).

7

defenses aimed at establishing that Monsanto is not responsible for the injuries alleged by the Port District. At this stage in proceedings, the Court will not preclude Monsanto from asserting "affirmative defenses based on alleged negligence and comparative fault" on the grounds that they are barred by the California Tort Claims Act. (ECF No. 213 at 15).

**c. Causation Defenses**

The Port District moves for judgment on the pleadings with respect to Monsanto's defenses challenging causation: lack of causation by Defendants (No. 20); intervening/superseding cause (No. 21); damages are remote, derivative, unavailable (No. 22); and, cause in fact (No. 57). The Port District contends that the California Court of Appeals decision in *ConAgra* "soundly rejected" these affirmative defenses. (ECF No. 213 at 17). The Port District contends that "[u]nder *ConAgra*, the focus is on Monsanto's promotion of its PCB containing products with the knowledge of their danger and not on the alleged neglect of any third party, including the Port District." *Id.* at 18–19.

Monsanto contends that the Port District "improperly attempts to bypass causation . . . in this case on the basis of another court's post-trial factual findings in disparate circumstances." (ECF No. 220 at 28). Monsanto contends that the application of causation defenses presents unique factual issues not ripe for resolution at this stage in proceedings.

Initially, the Court notes that the Port District previously moved to strike these defenses under Rule 12(f) as non-affirmative defenses because they attack a prima facie element of the Port District's causes of action. This Court stated,

> Defenses challenging elements of a plaintiff's prima facie case are not appropriately characterized as affirmative defenses. *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002) ("A defense which demonstrates that Plaintiff has not met its burden of proof is not an affirmative defense."). However, district courts within this circuit have held that denials that are improperly pled as defenses should not be stricken on that basis alone. *See, e.g., Weddle v. Bayer AG Corp.*, No. 11CV817 JLS, 2012 WL 1019824, at *4 (S.D. Cal. Mar. 26, 2012); *Mattox v. Watson*, No. 07-5006, 2007 WL 4200213 (C.D. Cal. Nov. 15, 2007); *Smith v. Wal-Mart Stores*, No. 06-2069, 2006 WL 2711468 (N.D. Cal. Sept. 20, 2006). The motion to strike defenses 84, 20-22, and 57 on the grounds that they are not affirmative defenses is

denied.

(ECF No. 192).[3]

In *ConAgra*, the State of California prevailed in a representative public nuisance action against paint manufacturers after a court trial. The trial court ordered the defendants "to pay $1.15 billion into a fund to be used to abate the public nuisance created by interior residential lead paint in the 10 California jurisdictions represented by plaintiff." *Id.* at 514. On appeal, defendants argued that "the court's judgment [was] not supported by substantial evidence of knowledge, promotion, causation, or abatability." *Id.* The appellate court stated that causation was an element of a cause of action for public nuisance and that the "causation element of a public nuisance cause of action is satisfied if the conduct of a defendant is a substantial factor in bringing about the result." *Id.* at 543. Based on the evidence presented at trial, the court concluded that a rational factfinder could have reasonably concluded that the defendants' promotions of lead paint for interior use,

> which were a substantial factor in creating the current hazard were not too remote to be considered a legal cause of the current hazard even if the actions of others in response to those promotions and the passive neglect of owners also played a causal role. The court could therefore have concluded that defendants' promotions were the "legal cause" of the current nuisance.

*Id.* at 545–46.

In this case, Monsanto pleads the following causation defenses challenged by the Port District:

**(Lack of Causation by Defendants)**
20. Plaintiff's alleged claims fail because Defendants did not release or dispose of PCBs into the Bay and Plaintiff cannot prove causation.
...
**(Intervening/Superseding Cause)**

---

[3] In its response to the instant motion for judgment on the pleadings, Monsanto asserts, "Although causation is an essential element of public nuisance and purpresture on which the Port bears the burden of proof, Defendants have pled various affirmative defenses in an abundance of caution. The Court already declined to strike affirmative defenses on this basis." (ECF No. 220 at 28 n.7).

9

> 21. Plaintiff's alleged claims arising out of or relating to the presence of contamination at the property at issue, if any, were proximately caused by an independent intervening or superseding cause of which Defendants had not knowledge or over which they had no control at the time.
>
> …
>
> **(Damages Are Remote, Derivative, and Unavailable)**
> 22. The damages sought in the FAC are remote and/or derivative and otherwise unavailable as a matter of law.
>
> …
>
> **(Cause in Fact)**
> 57. Plaintiff cannot prove any facts showing that the conduct of Defendants was the cause in fact of any threatened or actual damages or other harm to the Plaintiff as alleged in its FAC.

(ECF No. 110). In order to prevail on its claims, the Port District must demonstrate through evidence that Monsanto's conduct was a substantial factor causing the nuisance in the San Diego Bay. *See ConAgra*, 227 Cal. Rptr. 3d at 543. Causation analysis involves factual issues that cannot be resolved at this stage in proceedings. In this case, discovery is ongoing and no trial has occurred. The Court cannot conclude that these "causation-based" defenses fail as a matter of law at this stage in proceedings.

### d. Apportionment Defenses

The Port District moves to dismiss the following "defenses based on proportionate responsibility" asserted by Monsanto: damages caused by a third person (No. 10); proportionate liability (No. 12); and fault of a third party (No. 41). The Port District contends that these "efforts to deflect liability on other third parties are . . . misguided" in light of the *ConAgra* opinion. (ECF No. 213 at 19). The Port District contends that apportionment is not a defense to liability. The Port District contends that "Monsanto's apportionment defense seeks to shift liability" onto those who used the products as the products were intended to be used and that the "facts are insufficient to show that the nuisance at issue here is divisible." *Id.* at 20.

Monsanto asserts that apportionment is ordinarily required in California nuisance cases and that "only where the harm is not capable of apportionment, [is] each contributor

10

15cv578-WQH-AGS

[] liable for the entire harm." (ECF No. 220 at 31–32 (quoting *Con Agra*, 227 Cal. Rptr. 3d at 549)). Monsanto asserts that "it is well settled in California that a plaintiff's recovery will be reduced to account for its own contribution to an injury." *Id.* at 32. Monsanto states that it "should have an opportunity to prove that . . . its alleged injury is capable of apportionment." *Id.* at 33.

In *ConAgra*, the defendants challenged the trial court's causation finding after trial on the grounds that "they could not be held liable except in proportion to their individual contributions to the creation of the public nuisance." 227 Cal. Rptr. 3d at 548–49. The Court stated that "[p]roportionality is not a causation issue." *Id.* at 549. The Court further stated,

> "[T]he burden rests *upon the defendant* to produce sufficient evidence to permit the apportionment to be made. [¶] When the apportionment is made, each person contributing to the nuisance is subject to liability only for his own contribution. He is not liable for that of others; but the fact that the others are contributing is not a defense to his own liability." (Rest.2d Torts, § 840E, com. B, italics added.) The trial court could have reasonably concluded that defendants did not prove that the harm was capable of apportionment. The Restatement confirms that where the harm is not capable of apportionment, each contributor is liable for the entire harm. (109 Rest.2d Torts, § 840E, com. c.) In this case, it is clear that the trial court properly concluded that the harm was incapable of apportionment and therefore held all three defendants jointly and severally liable for the entire harm.

*Id.* The defendants argued that trial court erred in imposing joint and several liability; defendants asserted that joint and several liability resulted in a disproportionate burden on defendants when "many people were involved in the creation of the nuisance." *Id.* at 556. The *ConAgra* court stated

> Each defendant bore the burden of producing evidence upon which an apportionment could be made. (Rest.2d Torts, § 840E, com. B.) "Unless sufficient evidence permits the factfinder to determine that damages are divisible, they are indivisible." (Rest.3d Torts: Apportionment of Liability, § 26, com. g.). When a court determines that apportionment cannot be accomplished, each defendant who contributed is liable for the entire harm. (Rest.2d Torts, § 840E, com. c.).

*Id.* at 556. The *ConAgra* court then upheld the trial court's "factual finding" that defendants had failed to establish that the public nuisance was divisible. *Id.* at 557.

In this case, discovery is ongoing and no trial has yet occurred. The Port District has not demonstrated that these "apportionment defenses" fail as a matter of law at this early stage of proceedings.

## IV. CONCLUSION

IT IS HEREBY ORDERED that the motion for judgment on the pleadings is DENIED. (ECF No. 213).

DATED: 9/5/18

_____
**WILLIAM Q. HAYES**
United States District Judge