1  **LATHAM & WATKINS LLP**
   Robert M. Howard (Bar No. 145870)
2  Daniel P. Brunton (Bar No. 218615)
   12670 High Bluff Drive
3  San Diego, California 92130
   Tel:  858.523.5400 / Fax:  858.523.5450
4  Email:  robert.howard@lw.com
   Email:  daniel.brunton@lw.com
5
   **CAPES, SOKOL, GOODMAN**
6  **AND SARACHAM, PC**
   Adam E. Miller, MOBA No. 40945
7  (Admitted *Pro Hac Vice*)
   Michael W. Cromwell, MOBA No. 210511
8  (Admitted *Pro Hac Vice*)
   7701 Forsyth Boulevard, Twelfth Floor
9  St. Louis, Missouri 63105
   Tel.: 314.754.4870 / Fax: 314.754.4811
10 Email:  miller@capessokol.com
   Email:  cromwell@capessokol.com
11
   Daniel Blakey (Bar No. 143748)
12 3601 Oak Avenue
   Manhattan Beach, California 902066
13 Tel:  310.545.1723 / Fax:  314.754.4849

14 Attorneys for Defendants Monsanto
   Company, Solutia Inc., and Pharmacia LLC
15
   *Additional Counsel on Signature Pages*
16

17                    **UNITED STATES DISTRICT COURT**

18                  **SOUTHERN DISTRICT OF CALIFORNIA**

19 | SAN DIEGO UNIFIED PORT | CASE NO. 3:15-cv-00578-WQH-AGS |
   | DISTRICT, a public corporation; and |  |
20 | CITY OF SAN DIEGO, a municipal | ***DISCOVERY MATTER*** |
   | corporation, |  |
21 |  | **DEFENDANTS' MEMORANDUM OF** |
   |  | **POINTS AND AUTHORITIES IN** |
22 | Plaintiffs, | **SUPPORT OF MOTION TO QUASH** |
   |  | **SUBPOENA OF CLAY COMPANY** |
23 | v. | **AND FOR A PROTECTIVE ORDER** |
   |  |  |
24 | MONSANTO COMPANY, SOLUTIA |  |
   | INC., and PHARMACIA | Hon. Andrew G. Schopler |
25 | CORPORATION, |  |
   |  | Hearing Date:  August 6, 2019 |
26 | Defendants. | Time:  4:00 PM |
   |  | Ctrm:  5c |
27
28

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.  INTRODUCTION ................................................................................................ 1

II.  RELEVANT FACTUAL BACKGROUND ........................................................ 2

III.  LEGAL STANDARD ......................................................................................... 5

IV.  ARGUMENT ...................................................................................................... 7

    A.  The Port District's Subpoena Was Issued for an Improper Purpose and Seeks Information That Is Not Relevant to the Litigation, and Is Grossly Overbroad and Unduly Burdensome ........................................................................................ 7

        1.  The Subpoena Was Issued for an Improper Purpose ............... 7

        2.  The Subpoena Is Not Relevant to the Port District's Claims or Defendants' Defenses ................................................. 8

        3.  The Subpoena Is Overbroad and Unduly Burdensome ............ 9

    B.  The Subpoena Should Be Quashed and/or a Protective Order Should Issue Because the Documents and Information It Seeks Are Privileged ................................................ 10

        1.  The Attorney-Client Privilege Protects All Communications at Issue ......................................................... 10

        2.  The Work Product Doctrine Protects All Documents at Issue .......................................................................................... 13

V.  CONCLUSION ................................................................................................. 14

US-DOCS\108678453

i

CASE NUMBER: 3:15-cv-00578-WQH-AGS
DEFS.' MEMORANDUM OF P & A ISO MOTION TO
QUASH DEPOSITION OF CLAY CO.

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

### CASES

4
5
*Apple v. Qualcomm Inc.*,
No. 3:17-cv-00108-GPC-MDD, 2018 WL 3861893 (S.D. Cal.
Aug. 14, 2018) ............................................................................................. 7

6
7
*Carrera v. First Am. Home Buyers Prot. Co.*,
No. 13cv1585-BAS (JLB), 2014 WL 3695403 (S.D. Cal. July 23,
2014) ............................................................................................................. 7

8
9
*Convolve, Inc. v. Dell, Inc.*,
No. C 10-80071 WHA, 2011 WL 1766486 (N.D. Cal. May 9,
2011) ............................................................................................................. 5

10
11
*D. I. Chadbourne, Inc. v. Super. Ct.*,
60 Cal. 2d 723 (1964) ............................................................................ 12, 13

12
*Dart Indus. Co. v. Westwood Chem. Co.*,
649 F.2d 646 (9th Cir. 1980) ...................................................................... 5

13
14
*People ex rel. Dep't of Pub. Works v. Donovan*,
57 Cal. 2d 346 (1962) ................................................................................ 12

15
*Edwards Wildman Palmer LLP v. Super. Ct.*,
231 Cal. App. 4th 1214 (2014) .................................................................. 11

16
17
*Fed. Trade Comm'n v. AMG Servs., Inc.*,
291 F.R.D. 544 (D. Nev. 2013) ................................................................ 5, 9

18
*Fireman's Fund Ins. Co. v. Super. Ct.*,
196 Cal. App. 4th 1263 (2011) .................................................................. 12

19
20
*Freed v. Home Depot U.S.A., Inc.*,
No. 18cv359-BAS (LL), 2019 WL 582346 (S.D. Cal. Feb. 13,
2019) ................................................................................................... 6, 9, 10

21
22
*Grand Canyon Skywalk Development LLC v. Cieslak*,
2015 WL 4773585 (D. Nev. Aug. 13, 2015), *aff'd*, 2016 WL
890921 (D. Nev. Mar. 7, 2016) .................................................................. 12

23
24
*In re Grand Jury Subpoena*,
357 F.3d 900 (9th Cir. 2004) ...................................................................... 14

25
26
*JuxtaComm Techs., Inc. v. Microsoft Corp.*,
No. CV 09-1394-GHK, 2009 WL 10673585 (C.D. Cal. Apr. 3,
2009) ............................................................................................................. 14

27
*Kandel v. Brother Intern. Corp.*,
683 F. Supp. 2d 1076 (C.D. Cal. 2010) ..................................................... 13

28

US-DOCS\108678453

ii

CASE NO. 2:16-cv-03493-FMO-AS
DEFS.' MEMORANDUM OF P & A ISO MOTION
TO QUASH DEPOSITION OF CLAY CO.

*Kohler v. Flava Enters., Inc.*,
No. 10cv730-IEG (NLS), 2011 WL 2600727 (S.D. Cal. June 30,
2011) .................................................................................................................. 10

*Maldonado v. Super. Ct.*,
53 Cal. 4th 1112 (2012) ................................................................................ 11

*Mattel, Inc. v. Walking Mountain Productions*,
353 F.3d 792 (9th Cir. 2003) ...................................................................... 8, 9

*Meoli v. Am. Med. Serv. of San Diego*,
287 B.R. 808 (S.D. Cal. 2003) ................................................................ 13, 14

*Moon v. SCP Pool Corp.*,
232 F.R.D. 633 (C.D. Cal. 2005) ............................................................... 5, 6

*Oppenheimer Fund, Inc. v. Sanders*,
437 U.S. 340 (1978) ......................................................................................... 7

*Platypus Wear, Inc. v. K.D. Co.*,
905 F. Supp. 808 (S.D. Cal. 1995) ............................................................... 11

*In re REMEC, Inc. Sec. Litig.*,
No. 04cv1948 JLS (AJB), 2008 WL 2282647 (S.D. Cal. May 30,
2008) ................................................................................................................ 6, 7

*Sanchez Y Martin S.A. de C.V. v. Dos Amigos, Inc.*,
2018 WL 2387580 (S.D. Cal. May 24, 2018) ............................................. 10

*Schaeffer v. Gregory Vill. Partners, L.P.*,
78 F. Supp. 3d 1198 (N.D. Cal. 2015) ......................................................... 13

*Stardock Sys., Inc. v. Reiche*,
No. 4:17-cv-07025-SBA (KAW), 2018 WL 6259536 (N.D. Cal.
Nov. 30, 2018) ............................................................................................... 12

*Stone Brewing Co., LLC v. Molson Coors Brewing Co.*,
No. 18cv331-BEN-LL, 2019 WL 2176792 (S.D. Cal. May 20,
2019) ................................................................................................................ 12

*Televisa, S.A. de C.V. v. Univision Communications, Inc.*,
2008 WL 4951213 (C.D. Cal. Nov. 17, 2008) .............................................. 9

*Thomas Land & Dev., LLC v. Vratsinas Constr. Co.*,
No. 3:18-cv-1896-AJB-NLS, 2019 WL 126859 (S.D. Cal. Jan. 8,
2019) ................................................................................................................ 8, 9

*Trunk v. City of San Diego*,
No. 06cv1697-LAB, 2007 WL 3001679 (S.D. Cal. Oct. 11, 2007) ................. 5

*United States v. Nobles*,
422 U.S. 225 (1975) ........................................................................................ 14

US-DOCS\108678453.6

iii

CASE NO. 2:16-cv-03493-FMO-AS
DEFS.' MEMORANDUM OF P & A ISO MOTION
TO QUASH DEPOSITION OF CLAY CO.

1

**STATUTES**

2

Cal. Evid. Code § 952 ............................................................................. 11

3

**RULES**

4

Fed. R. Civ. P.

5
    26(b)(1) ....................................................................................... 10
    26(c) ...................................................................................... 1, 5, 6
6
    26(c)(1) .................................................................................... 6, 7
    30(b)(6) ......................................................................................... 4
    45 ............................................................................................... 6, 8
7
    45(d) .............................................................................................. 1
    45(d)(1) ......................................................................................... 6
8
    45(d)(3)(A) .................................................................................... 6
    45(d)(3)(A)(iii) ............................................................................ 10
9
    45(d)(3)(A)(iv) .............................................................................. 7

10

Fed. R. Evid. 501 ....................................................................... 10, 11

11

Local Rule 26.1 ............................................................................ 1, 4

12

**OTHER AUTHORITIES**

13

Decl. of Robert M. Howard ........................................... 1, 2, 3, 4, 5, 8, 9

14

First Am. Compl., Dkt. No. 25 .................................................... 2, 9

15

Jt. Mot., Dkt. No. 407 ...................................................................... 5

16

Order, Dkt. No. 408 .......................................................................... 5

17

18

19

20

21

22

23

24

25

26

27

28

US-DOCS\108678453

iv

CASE NO. 2:16-cv-03493-FMO-AS
DEFS.' MEMORANDUM OF P & A ISO MOTION
TO QUASH DEPOSITION OF CLAY CO.

1  Pursuant to Federal Rules of Civil Procedure ("Federal Rules") Rule 26(c)

2  and 45(d) and Local Rule 26.1, Defendants Monsanto Company, Solutia Inc., and

3  Pharmacia LLC ("Defendants") submit the following Motion to Quash the Port

4  District's Subpoena of Clay Company and for a Protective Order filed concurrently

5  herewith.  Defendants, Clay Company, and the San Diego Unified Port District

6  ("Port District") have met and conferred regarding the issues in dispute consistent

7  with the requirements of Local Rule 26.1.  Decl. of Robert M. Howard ("Howard

8  Decl.") ¶¶ 12-14.  Defendants and the Port District were unable to resolve the

9  issues in dispute.  *Id.*

10 **I.    INTRODUCTION**

11     Clay Company is a public affairs and consulting firm that has, in the past,

12 worked with Monsanto on public relations in the San Diego area.  Clay Company

13 has no facts relevant to the claims or defenses in this case.

14     In lieu of seeking discovery regarding "Old Monsanto's"[1] production of

15 PCBs approximately 40-80 years ago—which is the subject of the Port District's

16 claims here—the Port District recently issued a Subpoena to Clay Company,

17 seeking documents and testimony from a public affairs and consulting firm

18 retained ***decades*** later to assist with the strategy and defense of this litigation.

19 Whatever the Port District's motivation in issuing this Subpoena, it is

20 unequivocally not to obtain legitimate discovery in this action and, thus, is not

21 proper.

22     The Subpoena is sweeping, demanding the production of documents and

23 testimony pertaining to the scope of services provided to Monsanto by Clay

24

25

26 [1] "Old Monsanto" refers to the original manufacturer of PCBs that ceased
27 manufacturing those chemicals approximately four decades ago.  Defendants are
   alleged to be successors or indemnitors of Old Monsanto.

1  Company, and all documents and communications between or among Clay

2  Company and defendants, tenants of the Port District, and any third parties and/or

3  governmental entities regarding "the Port District, its business or operations, PCBs,

4  and/or the Action." *See* Howard Decl. at ¶¶ 10-11, Ex. 2.  As is evident on the face

5  of the request, the Port District's Subpoena demands information from a non-fact

6  witness on overreaching and irrelevant topics, with no regard for privilege.

7    The Port District's lawsuit ***exclusively*** concerns Old Monsanto's allegedly

8  tortious conduct between 1935 and 1979, when Old Monsanto allegedly

9  manufactured PCBs.  First Am. Compl. ("FAC"), Dkt. No. 25, at ¶¶ 2, 11, 29-62.

10  The FAC contains no allegations concerning Clay Company.  Despite the lack of

11  any relevance whatsoever to the operative facts and the Port District's PCB claims,

12  the Port District insists on seeking documents and testimony from Clay Company

13  in its role as a public relations firm and attorney consultant—which, as a nonparty

14  alone, is entitled under Ninth Circuit law to extensive protections from discovery.

15  Moreover, any arguable relevance of Clay Company's work for Monsanto's

16  attorneys (if any) is clearly outweighed by the burden these requests would impose

17  on Clay Company and the potential chilling effect it would have on attorney-client

18  and attorney work product privileges and protections, to which Defendants and

19  Clay Company are both entitled.

20    Simply put, the Port District lacks any legitimate justification for the

21  Subpoena.  The Port District's true purpose for such an overbroad and invasive

22  Subpoena seeking irrelevant information plainly is not to pursue fact discovery or

23  obtain evidence to support its claims.  Defendants urge the Court not to condone

24  such plainly abusive tactics and to quash the Subpoena.

25  **II.    RELEVANT FACTUAL BACKGROUND**

26    The Port District seeks documents and testimony from Clay Company, a

27  public affairs and consulting firm that has previously worked under the direction of

28   US-DOCS\108678453

CASE NUMBER: 3:15-cv-00578-WQH-AGS
DEFS.' MEMORANDUM OF P & A ISO MOTION TO
QUASH DEPOSITION OF CLAY CO.

1    Monsanto's attorneys in connection with the pending litigation.  Howard Decl. at

2    ¶¶ 2-3.  Clay Company has no nexus to "Old Monsanto's" manufacturing of PCBs

3    approximately 40-80 years ago, which is the subject of the Port District's lawsuit.

4    Instead, Clay Company was retained *after* the Port District filed this lawsuit to

5    assist and advise Defendants' attorneys on various public and government relations

6    aspects of their litigation strategy.  *Id.* at ¶ 4.

7           Monsanto engaged Clay Company's services beginning in July 2016 through

8    approximately September 2018.  *Id.* at ¶ 5.  Clay Company worked at the direction

9    of Monsanto's attorneys.  *Id.* at ¶ 3.  During this time, Clay Company coordinated

10   several meetings between Monsanto and other stakeholders, and also

11   communicated with the San Diego Port Tenants' Association regarding the broader

12   implications of California Senate Bill 859, Section 11, which, beginning in 2018,

13   creates standing for trustees of public lands to bring public nuisance claims.  *Id.* at

14   ¶¶ 6-7.  Clay Company's outreach to stakeholders involved communication with

15   local businesses and industry groups that might be impacted by *future* public

16   nuisance claims, in light of the Port District's pending lawsuit against Monsanto.

17   *Id.*  Clay Company's communications with the Port Tenants' Association, on the

18   other hand, centered on the potential *future* implications of Senate Bill 859 for the

19   Port's tenants.  *Id.*  Neither Clay Company's past coordination of outreach to non-

20   decisionmaking stakeholders in the San Diego area, nor its past communications

21   with the Port Tenants' Association has any bearing on the outcome of the Port

22   District's action, and it is plainly not relevant to any of the claims or defenses at

23   issue in this public nuisance case.  Further, rather than attempt to depose those

24   entities to whom Clay Company's outreach effort was directed, the Port is

25   attempting to depose Monsanto's public relations consultant, which was working at

26   the request of Monsanto's attorneys.

27          On or around June 3, 2019, the Port District issued a Subpoena to Testify at

28   US-DOCS\108678453

CASE NUMBER: 3:15-cv-00578-WQH-AGS
DEFS.' MEMORANDUM OF P & A ISO MOTION TO
QUASH DEPOSITION OF CLAY CO.

1    a Deposition Pursuant to Federal Rule of Civil Procedure 30(b)(6) to Clay

2    Company. *Id.* ¶ 8, Ex. 1.  The deposition, per the corrected subpoena issued on

3    June 4, 2019, was originally noticed for July 8, 2019, at 2:00 p.m., and demands

4    production of (1) "[Clay Company's] contract with Defendants, and any

5    amendments thereto, and any Communications between [Clay Company] and

6    Defendants regarding the contract, amendment, or negotiations concerning the

7    same," (2) "[a]ll documents and communications (specifically including email, text

8    messages, and other ESI/recorded electronic communications) between or among

9    [Clay Company], Defendants, and any tenants of the Port District (including, but

10   not limited to, members of the San Diego Port Tenants' Association), Concerning

11   the Port District, its business or operations, PCBs and/or the Action," (3) "[a]ll

12   Documents and Communications (specifically including email, text messages, and

13   other recorded electronic communications) between or among [Clay Company],

14   Defendants, and any Third Parties and/or governmental entities Concerning the

15   Port District, its business or operations, PCBs, and/or the Action," and (4) "[a]ll

16   Documents [Clay Company] ha[s] prepared, provided to, or received from

17   Defendants, the Port District's tenants (including, but not limited to, members of

18   the San Diego Port Tenants' Association), governmental entities and/or other Third

19   Parties Concerning the Port District, its business or operations, PCBs, and/or the

20   Action." *Id.* at ¶¶ 8, 11, Ex. 2.

21          Defendants' counsel sent written objections to the Subpoena of Clay

22   Company to the Port District's counsel on June 28, 2019.  *Id.* at ¶ 12, Ex. 5.

23   Pursuant to Local Rule 26.1, Defendants' counsel and the Port District's counsel

24   met and conferred in good faith on July 1, 2019 regarding the substance of the Port

25   District's Subpoena and Defendants' Motion.  *Id.* at ¶ 13.  Defendants' counsel

26   requested that the Port District withdraw its Subpoena on the grounds set forth in

27   this Motion.  *Id.*  The Port District's counsel advised Defendant's counsel orally

28   US-DOCS\108678453

CASE NUMBER: 3:15-cv-00578-WQH-AGS
DEFS.' MEMORANDUM OF P & A ISO MOTION TO
QUASH DEPOSITION OF CLAY CO.

1  and through email that the Port District would not agree to withdraw the Subpoena.

2  *Id.*, Ex. 6.

3        On July 2, 2019, in light of the pending discovery dispute, Defendants and

4  the Port District jointly moved to continue the July 8, 2019 fact discovery deadline

5  in this case as to the deposition of Clay Company.  Joint Mot., Dkt. No. 407.  On

6  July 3, 2019, the Court granted the Parties' Joint Motion.  Order, Dkt. No. 408.

7  **III.    LEGAL STANDARD**

8        As a nonparty to this case, Clay Company is entitled to extensive protections

9  from discovery.  Discovery may be taken from Clay Company ***only*** if it is

10  necessary ***and*** narrowly tailored to minimize its burden.  *Convolve, Inc. v. Dell,*

11  *Inc.*, No. C 10-80071 WHA, 2011 WL 1766486, at *2 (N.D. Cal. May 9, 2011)

12  (quashing subpoena of non-party as overbroad and imposing an undue burden, and

13  emphasizing that "[r]equests to non-parties should be narrowly drawn to meet

14  specific needs for information").  The Ninth Circuit has explained that permissible

15  discovery from nonparties is "more limited to protect [them] from harassment,

16  inconvenience, or disclosure of confidential documents."  *Dart Indus. Co. v.*

17  *Westwood Chem. Co.*, 649 F.2d 646, 649 (9th Cir. 1980) (affirming order quashing

18  subpoena directed at nonparty former defendant).  Simply put, "discovery

19  permissible from nonparties is narrower than permissible from parties to the

20  action." *Fed. Trade Comm'n v. AMG Servs., Inc.*, 291 F.R.D. 544, 553 (D. Nev.

21  2013) (granting motion for protective order significantly limiting scope of

22  subpoena); *see also Trunk v. City of San Diego*, No. 06cv1697-LAB (WMc), 2007

23  WL 3001679, at *5 (S.D. Cal. Oct. 11, 2007) (granting motion to quash and citing

24  *Dart* for the proposition that non-parties are "entitled to broader protection under

25  Rule 26(c)"); *see also Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 638 (C.D. Cal.

26  2005) (granting motion to quash and citing *Dart* for proposition that "discovery

27  restrictions may be even broader where target is nonparty").

28

1    Consistent with these principles, courts "***must*** quash or modify a subpoena

2  that: . . . (iii) requires disclosure of privileged or other protected matter, if no

3  exception or waiver applies; or (iv) subjects a person to undue burden." Fed. R.

4  Civ. P. 45(d)(3)(A) (emphasis added). Further, a party issuing a subpoena "***must***

5  take reasonable steps to avoid imposing undue burden or expense" on a nonparty,

6  and the court "***must*** enforce this duty." *Id.* at (d)(1) (emphasis added).

7
8
9
10
11

> "[A]n evaluation of undue burden requires the court to weigh the burden to the subpoenaed party against the value of the information to the serving party[,]" and mandates the court's consideration of such factors as relevance, the serving party's need for the requested documents, the breadth of the document request, the particularity with which the documents are described, and the burden imposed.

12  *Freed v. Home Depot U.S.A., Inc.*, No. 18cv359-BAS (LL), 2019 WL 582346, at

13  *3 (S.D. Cal. Feb. 13, 2019) (internal citations omitted) (quoting *Moon*, 232 F.R.D.

14  at 637). Moreover, a party—like Defendants here—has standing to seek to quash a

15  subpoena served on a nonparty based on a claim that the subpoena infringes upon

16  the movant's legitimate and privileged interests. *See Freed*, 2019 WL 582346, at

17  *2 ("[A] party moving to quash a non-party subpoena has standing when the party

18  has a personal right or privilege in the information sought to be disclosed.")

19  (internal citations omitted).

20    In addition to motions to quash under Rule 45, nonparties "from whom

21  discovery is sought may move for a protective order . . . ." Fed. R. Civ. P.

22  26(c)(1). Likewise, "[a] party can move for a protective order in regard to a

23  subpoena issued to a non-party if it believes its own interests are jeopardized by

24  discovery sought from a third party and has standing under Rule 26(c) to seek a

25  protective order regarding subpoenas issued to non-parties which seek irrelevant

26  information." *In re REMEC, Inc. Sec. Litig.*, No. 04cv1948 JLS (AJB), 2008 WL

27
28  US-DOCS\108678453

CASE NUMBER: 3:15-cv-00578-WQH-AGS
DEFS.' MEMORANDUM OF P & A ISO MOTION TO
QUASH DEPOSITION OF CLAY CO.

1  2282647, at *1 (S.D. Cal. May 30, 2008) (internal citations omitted).  On such

2  motion,

> [t]he court may, for good cause, issue an order to protect
> a party or person from annoyance, embarrassment,
> oppression, or undue burden or expense, including one or
> more of the following: (A) forbidding the disclosure or
> discovery; [and] (B) specifying terms, including time and
> place . . . for the disclosure or discovery . . . .

7  Fed. R. Civ. P. 26(c)(1).  The movant can meet the burden to show "good cause"

8  by demonstrating "that the sought after discovery is irrelevant."  *Carrera v. First*

9  *Am. Home Buyers Prot. Co.*, No. 13cv1585-BAS (JLB), 2014 WL 3695403, at *1

10  (S.D. Cal. July 23, 2014) (internal citations omitted).  Courts within the Ninth

11  Circuit have emphasized that "[t]he compulsion of production of irrelevant

12  information is an inherently undue burden."  *Id.* (internal citations omitted).

13  Further, the court "***must*** quash or modify a subpoena that . . . . subjects a person to

14  undue burden."  *Apple v. Qualcomm Inc.*, No. 3:17-cv-00108-GPC-MDD, 2018

15  WL 3861893, at *3 (S.D. Cal. Aug. 14, 2018) (quoting Fed. R. Civ. P.

16  45(d)(3)(A)(iv) (emphasis added)).

17  **IV.    ARGUMENT**

18      **A.    The Port District's Subpoena Was Issued for an Improper Purpose and Seeks Information That Is Not Relevant to the Litigation, and Is Grossly Overbroad and Unduly Burdensome**

20         **1.    *The Subpoena Was Issued for an Improper Purpose***

21      As the Supreme Court has explained, "[i]n deciding whether a request comes

22  within the discovery rules, ***a court is not required to blind itself to the purpose for***

23  ***which a party seeks information***."  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S.

24  340, 353 n.17 (1978) (emphasis added), *superseded by rule on other grounds*.

25  Here, the purpose for which the Port District seeks information is ***unequivocally***

26  ***not*** to pursue legitimate fact discovery in support of its PCB-related tort claims

27  against Defendants.  Undeniably, any information responsive to the Subpoena

28  US-DOCS\108678453

1   would have no relevance whatsoever to the Port District's lawsuit, which asserts

2   claims alleging tortious conduct by "Old Monsanto" more than 40 years ago. Clay

3   Company was retained in 2016, **after** the Port District filed the present lawsuit in

4   2015, and for the purpose of advising Defendants' attorneys on certain public and

5   governmental relations aspects of their litigation strategy. Whatever the Port

6   District's motivation, it does not comport with the purposes of legitimate

7   discovery.

8       *Mattel, Inc. v. Walking Mountain Productions*, 353 F.3d 792 (9th Cir. 2003),

9   is instructive. In *Mattel*, the Ninth Circuit held that the plaintiff's subpoena was

10  properly quashed even though some topics related broadly to the litigation, because

11  other topics had "no bearing on th[e] litigation," and it was clear the subpoena was

12  served for an improper purpose, *i.e.*, "annoying and harassment and not really for

13  the purpose of getting information" relevant to plaintiff's claims. *Id.* at 813-14.

14      Here too, the Subpoena superficially may appear to seek information broadly

15  related to this litigation—the deposition topics request information concerning "the

16  Port District, its business or operations, PCBs, and/or the Action." Howard Decl.

17  at ¶ 10, Ex. 2. But the fact that the Subpoena was served on a Monsanto consulting

18  firm with no connection to PCBs, whose work centered on litigation strategy by

19  way of outreach to non-decisionmaking stakeholders in the San Diego area, makes

20  clear that the Subpoena was not issued in order to obtain relevant information

21  through legitimate discovery.

22                  **2.    The Subpoena Is Not Relevant to the Port District's Claims
23                          or Defendants' Defenses**

24      A Rule 45 subpoena is subject to the relevance requirements set forth in

25  Rule 26(b). *See Thomas Land & Dev., LLC v. Vratsinas Constr. Co.*, No. 3:18-cv-

26  1896-AJB-NLS, 2019 WL 126859, at *1 (S.D. Cal. Jan. 8, 2019) (noting that

27  "[t]he scope of the discovery that can be requested through a Rule 45 subpoena is

28  US-DOCS\108678453

1   the same as the scope under Rule 26(b)" and "Rule 26(b) allows a party to obtain

2   discovery concerning any nonprivileged matter that is relevant to any party's claim

3   or defense"). Relevance is construed more narrowly for nonparties than parties.

4   *See AMG Servs., Inc.*, 291 F.R.D. at 553.

5          In *Televisa, S.A. de C.V. v. Univision Communications, Inc.*, the court

6   granted the defendant's motion to quash subpoenas compelling trial testimony and

7   document production where the "testimony and documents sought [we]re

8   irrelevant to the issues presented in th[e] litigation," and because of the "breadth of

9   the requests," as the subpoena sought "*all*" documents and did not "tailor the

10  information request to the immediate needs of the case." No. CV 05-3444 PSG

11  (MANx), 2008 WL 4951213, at *2-3 (C.D. Cal. Nov. 17, 2008) (emphasis in

12  original). As set forth above, the Subpoena demands information that has no

13  relevance whatsoever to this litigation. The Port District's claims **exclusively**

14  concern Defendants' allegedly tortious conduct between 1935 and 1979 when "Old

15  Monsanto" allegedly manufactured PCBs. FAC, Dkt. No. 25, at ¶¶ 2, 11, 29-62.

16  Yet the Subpoena demands from Monsanto's public affairs and litigation strategy

17  consultant—an entity that has no relationship with PCBs or the operative facts—

18  broad information regarding **Clay Company's** communications (privileged and

19  otherwise) with Monsanto, the Port's tenants, and other third parties and

20  governmental entities concerning "the Port District, its business or operations,

21  PCBs, and/or the Action." Howard Decl. at ¶¶ 10-11, Ex. 2. The Subpoena should

22  be quashed and/or a protective order should issue due to the Port District's failure

23  to seek relevant information.

24                   **3.    The Subpoena Is Overbroad and Unduly Burdensome**

25          Subpoenas that do not "tailor the information request to the immediate needs

26  of the case" are too broad and must be quashed. *See, e.g.*, *Mattel*, 353 F.3d at 813.

27  Further, "[c]ourts have broad discretion to determine whether a subpoena is unduly

28  US-DOCS\108678453

1   burdensome." *Freed*, 2019 WL 582346, at *3.  In *Sanchez Y Martin S.A. de C.V.*

2   *v. Dos Amigos, Inc.*, the court quashed a subpoena and determined it was

3   "overbroad on its face as it s[ought] documents and communications pertaining to

4   two entities which [we]re not parties to th[e] case."  No. 17CV1943 LAB (JMA),

5   2018 WL 2387580, at *5 (S.D. Cal. May 24, 2018).  The court further noted that

6   plaintiff had failed to offer any "explanation as to how the information sought as to

7   these entities [wa]s relevant" and because it found "the information sought in the

8   subpoena [was] not relevant, not proportional to the needs of the case" and

9   "requested from a non-party," the court held that "the burden of the discovery

10  sought d[id] not outweigh its likely benefit." *Id.* (citing Fed. R. Civ. P. 26(b)(1)).

11          The Port District's Subpoena is overbroad, unduly burdensome, and not

12  tailored to the specific needs of this case.  While the Subpoena broadly seeks

13  information related to Clay Company's public relations work and litigation

14  strategies on behalf of Monsanto, and communications with certain entities

15  regarding the Port District, PCBs, and this Action, nothing the Port District could

16  possibly obtain pursuant to the Subpoena from Clay Company would bear on its

17  claims or Defendants' defenses, because it seeks disclosure of communications

18  from Monsanto's attorneys that occurred over 40 years ***after*** the period of time

19  relevant to the Port District's claims.

20  **B.    The Subpoena Should Be Quashed and/or a Protective Order**
21          **Should Issue Because the Documents and Information It Seeks**
            **Are Privileged**
22
23          ***1.    The Attorney-Client Privilege Protects All Communications***
                    ***at Issue***

24          "A court must quash or modify a subpoena that requires privileged or

25  protected matter." *Kohler v. Flava Enters., Inc.*, No. 10cv730-IEG (NLS), 2011

26  WL 2600727, at *1 (S.D. Cal. June 30, 2011) (citing Fed. R. Civ. P.

27  45(d)(3)(A)(iii)).  Federal Rule of Evidence 501 "governs any claim of privilege in

28  US-DOCS\108678453

1  a case proceeding in the federal courts." *Platypus Wear, Inc. v. K.D. Co.*, 905 F.

2  Supp. 808, 810 (S.D. Cal. 1995). Federal Rule of Evidence 501 provides that, "in

3  a civil case, state law governs privilege regarding a claim or defense for which

4  state law supplies the rule of decision." Fed. R. Evid. 501. Since state law public

5  nuisance and purpresture claims are at issue in the instant dispute, California state

6  law dictates how privilege in this case is applied. See *Platypus Wear*, 905 F. Supp.

7  at 813.

8      Under California law, a "confidential communication between client and

9  lawyer"

10         means information transmitted between a client and his
           or her lawyer in the course of that relationship and in
11         confidence by a means which, so far as the client is
           aware, discloses the information to no third persons other
12         than those who are present to further the interest of the
           client in the consultation or those to whom disclosure is
13         reasonably necessary for the transmission of the
           information or the accomplishment of the purpose for
14         which the lawyer is consulted, and includes a legal
           opinion formed and the advice given by the lawyer in the
15         course of that relationship.

16

17  Cal. Evid. Code § 952. "An attorney-client relationship exists for purposes of the

18  privilege whenever a person consults an attorney for the purpose of obtaining the

19  attorney's legal service or advice." *Edwards Wildman Palmer LLP v. Super. Ct.*,

20  231 Cal. App. 4th 1214, 1226 (2014) (internal citations omitted). "Unless and until

21  waived, [the attorney-client privilege] protects against *any and all disclosure* of

22  most communications from a client to his or her lawyer, or to a third person to

23  whom the communication is necessary for 'accomplishment of the purpose for

24  which the lawyer is consulted.'" *Maldonado v. Super. Ct.*, 53 Cal. 4th 1112, 1134

25  n.14 (2012) (emphasis in original).

26      Courts in the Ninth Circuit routinely extend the attorney-client protection to

27  communications through third-party agents, including public relations firms, when

28  US-DOCS\108678453

1  their expertise is being used to assist in providing special legal advice.  Courts have

2  determined that "the attorney-client privilege extends to the withheld

3  communications between [a public relations firm hired by the client] and

4  Defendants' counsel pertaining to 'giving and receiving legal advice about the

5  appropriate response to the lawsuit and making related public statements.'" *Stone*

6  *Brewing Co., LLC v. Molson Coors Brewing Co.*, No. 18cv331-BEN-LL, 2019 WL

7  2176792, at *4 (S.D. Cal. May 20, 2019) (quoting *Stardock Sys., Inc. v. Reiche*,

8  No. 4:17-cv-07025-SBA (KAW), 2018 WL 6259536, at *6 (N.D. Cal. Nov. 30,

9  2018)).  Further, as the court in *Grand Canyon Skywalk Development LLC v.*

10  *Cieslak* recognized,

11
> [i]n the case of a public relations consultant who is hired
> to conduct a media relations campaign on behalf of the
12  > client with respect to a lawsuit or legal dispute, it is
> important that the client's counsel be able to provide
13  > confidential legal advice to the consultant so that he can
> perform his duties on behalf of the client in accordance
14  > with that legal advice.

15

16  2015 WL 4773585, at *15-16 (D. Nev. Aug. 13, 2015), *aff'd*, 2016 WL 890921 (D.

17  Nev. Mar. 7, 2016) (finding "the confidential legal advice that [law firm] provided

18  to [public relations firm] with respect to the legal dispute is within the scope of the

19  attorney-client privilege and is protected from disclosure unless the privilege has

20  otherwise been waived"); *Fireman's Fund Ins. Co. v. Super. Ct.*, 196 Cal. App. 4th

21  1263, 1274 (2011) (determining that an agent fell into the category of "those to

22  whom disclosure is reasonably necessary for the transmission of the information or

23  the accomplishment of the purpose for which the lawyer is consulted"); *People ex*

24  *rel. Dep't of Pub. Works v. Donovan*, 57 Cal. 2d 346, 354 (1962)

25  ("[C]ommunication is nevertheless privileged although given by an agent of the

26  client for transmission to the attorney.") (internal citation omitted); *D. I.*

27  *Chadbourne, Inc. v. Super. Ct.*, 60 Cal. 2d 723, 735 (1964) ("[P]rivilege is [not]

28  US-DOCS\108678453

CASE NUMBER: 3:15-cv-00578-WQH-AGS
DEFS.' MEMORANDUM OF P & A ISO MOTION TO
QUASH DEPOSITION OF CLAY CO.

1  waived simply because the communication was made through an agent of the

2  client or of the attorney.") (internal citation omitted); *Schaeffer v. Gregory Vill.*

3  *Partners, L.P.*, 78 F. Supp. 3d 1198, 1202-05 (N.D. Cal. 2015) (finding public

4  relations firm a "functional employee" of legal team and determining that certain

5  communications were for a legal purpose, thereby rendering them privileged).

6      Monsanto hired Clay Company for the purposes of assisting its attorneys and

7  conducting public relations in response to the Port District's pending lawsuit

8  against Monsanto. Of note, rather than attempt to depose those entities to whom

9  Clay Company's outreach and communications were directed, the Port is

10  attempting to depose Monsanto's public relations consultant, which was working at

11  the request of Monsanto's attorneys. Notwithstanding the fact that the information

12  the Port District's Subpoena seeks is irrelevant to its case against Monsanto, the

13  communications and documents the Port District seeks are protected by the

14  attorney-client privilege and as such the Subpoena must be quashed.

15          **2.**     ***The Work Product Doctrine Protects All Documents at***
16                 ***Issue***

17      As described in detail above, the Port District's Subpoena seeks sweeping

18  categories of documents. Unlike the attorney-client privilege, the application of

19  the work product doctrine in diversity of citizenship cases is determined under

20  federal law. *See, e.g.*, *Meoli v. Am. Med. Serv. of San Diego*, 287 B.R. 808, 813

21  (S.D. Cal. 2003). "Under the work product doctrine, material obtained and

22  prepared by an attorney ***or the attorney's agent*** in anticipation of litigation or

23  preparation for trial may be immune from discovery." *Kandel v. Brother Intern.*

24  *Corp.*, 683 F. Supp. 2d 1076, 1083 (C.D. Cal. 2010) (emphasis added). "In order

25  for lawyers to act within the framework of our system of jurisprudence to promote

26  justice and protect their client's interests, it is essential that a lawyer work with a

27  certain degree of privacy, free from unnecessary intrusion by opposing parties and

28

1  their counsel." *Meoli*, 287 B.R. at 815 (internal citation and quotation marks

2  omitted).

3         The work product doctrine shields from discovery
"material prepared by agents for the attorney as well as

4  those prepared by the attorney himself" . . . . It also
extends to documents when, despite having a "dual

5  purpose," and taking into account the circumstances
surrounding their creation, "their litigation purpose so

6  permeates any non-litigation purpose that the two
purposes cannot be discretely separated from the factual

7  nexus as a whole."

8  *JuxtaComm Techs., Inc. v. Microsoft Corp.*, No. CV 09-1394-GHK (PLAx), 2009

9  WL 10673585, at *3 (C.D. Cal. Apr. 3, 2009) (citing *In re Grand Jury Subpoena*,

10  357 F.3d 900, 907 (9th Cir. 2004); *United States v. Nobles*, 422 U.S. 225, 238-39

11  (1975)).

12         Here too, any and all documents sought by the Subpoena are covered by the

13  work-product privilege, because any materials prepared by Clay Company at the

14  direction of Defendants' attorneys were prepared for the purpose of developing and

15  facilitating litigation strategy.  That Clay Company may have been providing

16  Monsanto and its attorneys advice from a public and governmental relations

17  perspective is of no moment—Clay Company's role and advice were related to the

18  present litigation.

19  **V.**     **CONCLUSION**

20         For the foregoing reasons, Defendants respectfully request that the Court

21  grant their motion to quash the Port District's Subpoena, and/or issue a protective

22  order against the Subpoena.

23

24  Dated:  July 8, 2019               **LATHAM & WATKINS LLP**

25

26              By s/ Robert M. Howard
                Robert M. Howard (Bar No. 145870)

27                  Daniel P. Brunton (Bar No. 218615)
                12670 High Bluff Drive

28  US-DOCS\108678453                    CASE NUMBER: 3:15-cv-00578-WQH-AGS
           14  DEFS.' MEMORANDUM OF P & A ISO MOTION TO
                    QUASH DEPOSITION OF CLAY CO.

1  San Diego, California  92130
   Tel:  858.523.5400 / Fax:  858.523.5450
2  Email:  robert.howard@lw.com
   Email:  daniel.brunton@lw.com
3
   **CAPES, SOKOL, GOODMAN**
4  **AND SARACHAM, P.C.**
   Adam E. Miller, MOBA No. 40945
5  (Admitted *Pro Hac Vice*)
   Michael W. Cromwell, MOBA No.
6  210511
   (Admitted *Pro Hac Vice*)
7  Lisa N. Debord, MOBA No. 210511
   (Admitted *Pro Hac Vice*)
8  7701 Forsyth Boulevard, Twelfth Floor
   St. Louis, Missouri 63105
9  Tel: 314.754.4870 / Fax: 314.754.4811
   Email:  miller@capessokol.com
10 Email:  cromwell@capessokol.com

11 Daniel Blakey (Bar No. 143748)
   3601 Oak Avenue
12 Manhattan Beach, California 902066
   Tel:  310.545.1723 / Fax:  314.754.4849
13
   **WHITE AND WILLIAMS LLP**
14 Thomas M. Goutman (PA. Bar No. 30236)
   (Admitted *Pro Hac Vice*)
15 David S. Haase (PA. Bar No. 73835)
   (Admitted *Pro Hac Vice*)
16 Rosemary R. Schnall, (PA. Bar No. 73455)
   (Admitted *Pro Hac Vice*)
17 1650 Market Street, Suite 1800
   Philadelphia, PA 19103
18 Telephone: 215.864.7057
   Facsimile: 215.789.7557
19 Email: goutman@whiteandwilliams.com
   Email: haased@whiteandwilliams.com
20
   Richard Campbell (Mass. Bar No. 663934)
21 (Admitted *Pro Hac Vice*)
   Melissa Nott Davis (Mass. Bar No.
22 654546)
   (Admitted *Pro Hac Vice*)
23 Stephen J. Hansen (Mass. Bar No. 679134)
   (Admitted *Pro Hac Vice*)
24 Brandon L. Arber (Mass. Bar No. 676425)
   (Admitted *Pro Hac Vice*)
25 101 Arch Street, Suite 1930
   Boston, Massachusetts 02110
26 Telephone: 617.748.5209
   Facsimile: 617.748.5201
27 Email: campbellrl@whiteandwilliams.com

US-DOCS\108678453
28                              CASE NUMBER: 3:15-cv-00578-WQH-AGS
                            15 DEFS.' MEMORANDUM OF P & A ISO MOTION TO
                               QUASH DEPOSITION OF CLAY CO.

1    Email: davism@whiteandwilliams.com
     Email: hansens@whiteandwilliams.com
2
     *Attorneys for Defendants Monsanto*
3    *Company, Solutia Inc., and Pharmacia LLC*

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

16    CASE NUMBER: 3:15-cv-00578-WQH-AGS
      DEFS.' MEMORANDUM OF P & A ISO MOTION TO
      QUASH DEPOSITION OF CLAY CO.