**KELLEY DRYE & WARREN LLP**
William J. Jackson (admitted *Pro Hac Vice*)
Texas Bar No. 00784325
Micheal W. Dobbs (admitted *Pro Hac Vice*)
Texas Bar No. 24012533
Kenneth O. Corley (admitted *Pro Hac Vice*)
Texas Bar No. 24048405
Nancy K. Yanochik (admitted *Pro Hac Vice*)
Texas Bar No. 01293000
515 Post Oak Blvd., Suite 900
Houston, Texas 77027
Telephone: (713) 355-5000

**KELLEY DRYE & WARREN LLP**
Andrew W. Homer (SBN 259852)
7825 Fay Ave., Suite 200
La Jolla, CA 92037
Telephone: (858) 795-0426

**SAN DIEGO UNIFIED PORT DISTRICT
OFFICE OF THE GENERAL COUNSEL**
Thomas A. Russell, SBN 108607, Gen. Counsel
Ellen F. Gross, SBN 149127, Asst. Gen. Counsel
John N. Carter, SBN 246886, Dep. Gen. Counsel
3165 Pacific Highway
P.O. Box 120488
San Diego, CA  92112-0488
Telephone: (619) 686-6219

*Attorneys for Plaintiff San Diego Unified Port District*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA, SAN DIEGO

| | |
|---|---|
| SAN DIEGO UNIFIED PORT DISTRICT, a public corporation; and CITY OF SAN DIEGO, a municipal corporation,<br><br>Plaintiffs,<br><br>v.<br><br>MONSANTO COMPANY, SOLUTIA INC., and PHARMACIA CORPORATION,<br><br>Defendants. | Case No. 3:15-CV-0578-WQH-AGS<br><br>**PLAINTIFF SAN DIEGO UNIFIED PORT DISTRICT'S RESPONSE TO DEFENDANTS' NOTICE OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT (ABATEMENT)**<br><br>Judge: Hon. William Q. Hayes<br>Filed Date:  March 13, 2015<br>Trial Date: |

## I. Introduction

Plaintiff San Diego Unified Port District (the "Port District") respectfully submits this Response to Defendants' Notice of Supplemental Authority in Support of Defendants' Motion for Summary Judgment, or in the Alternative, Partial Summary Judgment (Abatement) (ECF 478).

## II. Summary of the Response

*Juliana v. United States* is not comparable to this case and has no bearing on this Court's determination of Monsanto's motion for summary judgment on abatement. Unlike the private-party litigants in *Juliana*, the Port District is a government entity acting pursuant to its own legislatively-granted authority to abate a public nuisance in the Bay. Unlike the *Juliana* plaintiffs, the Port District does not ask this Court to compel any action by the executive or legislative branches of either the state or federal government, or to address an interstate issue. Rather, it acts pursuant to its legislative mandate to preserve, protect, and enhance the Bay by bring a public action under specifically enumerated statutes to abate a nuisance that exists on tidelands held exclusively under the Port District's jurisdiction. None of the division of power concerns articulated in *Juliana* are implicated.

The Port District does not ask this Court to engage in any decision-making regarding the specific methods or extent of environmental remediation in the Bay. It seeks only a determination of Monsanto's liability and the creation of a fund to address the contamination that liability is based upon, after which no post-judgment Court supervision is required. Decisions regarding how the nuisance will be abated can be reserved, as appropriate, for the San Diego Regional Water Quality Control Board ("Regional Board") and the Port District, governmental entities specifically tasked with accomplishing that purpose.

## III. Argument and Authority

*Juliana* is readily distinguishable and wholly inapposite to the resolution of this

case. Monsanto submitted the Ninth Circuit's opinion in *Juliana v. United States*, Case No. 18-36082, Dkt. No. 153-1 (9th Cir. Jan. 17, 2020) to the Court with the premise that the case precludes the Court from utilizing an abatement fund as part of abating the nuisance Monsanto created. (ECF No. 478 at 3.) In *Juliana*, a group of young people and environmental organizations sued the United States government seeking a prophylactic order from the judicial branch, compelling the executive and legislative branches to take broad steps to limit future use of fossil fuels and resulting greenhouse gas emissions. As described by the Ninth Circuit:

> The crux of the plaintiffs' requested remedy is an injunction requiring the government not only to cease permitting, authorizing, and subsidizing fossil fuel use, but also to prepare a plan subject to judicial approval to draw down harmful emissions. The plaintiffs thus seek not only to enjoin the Executive from exercising discretionary authority expressly granted by Congress, *see e.g.*, 30 U.S.C. § 201 (authorizing the Secretary of the Interior to lease land for coal mining), but also to enjoin Congress from exercising power expressly granted by the Constitution over public lands, *see* U.S. Const. art. IV § 3, cl. 2 ("The Congress shall have Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States.").

*Id.* at *6. The Ninth Circuit concluded that "it is beyond the power of an Article III court to order, design, supervise, or implement the plaintiffs' requested remedial plan" because "any effective plan would necessarily require a host of complex policy decisions entrusted, for better or for worse, to the wisdom and discretion of the executive and legislative branches." *Id.* at *8. For the following reasons, the Ninth Circuit's decision in *Juliana* does not affect the resolution of this case in any way.

### A. The Port District is a governmental entity with legislatively-granted authority to pursue abatement of a public nuisance on property it is entrusted to protect, preserve, and enhance.

Unlike the private-citizen *Juliana* plaintiffs, the Port District *is itself the government entity* that the State of California entrusted with statutory power to pursue the remedy it seeks. Through the Port Act, the Port District was legislatively endowed with general powers of "maintenance, control, regulation, and management" of the Bay and a mandate to "protect, preserve, and enhance" the "natural resources of the bay,

1  including plant and animal life . . . [and] quality of water in the bay." HARB. & NAV.
2  CODE App. 1 §§ 4-5.  More specifically, the Port District has the power to pass and
3  enforce "all necessary ordinances and resolutions for the regulation" of the property it
4  holds in trust, and to abate public nuisances by bringing a civil action. *See id.* and SDUPD
5  Code § 0.11(f).  Additionally, California specifically authorizes the Port District to bring
6  actions to abate nuisances within its jurisdiction. *See* CAL. CIVIL CODE §§ 3491 and 3494
7  (abatement is a statutory remedy for a public nuisance, and a public nuisance may be
8  abated by any public body or officer authorized thereto by law.) *and* CAL. PUB. RES. CODE
9  § 6009.1 (e) (providing that "[n]otwithstanding any other law, and in addition to any other
10 rights and capacities of a trustee to act under law, a trustee of public trust lands shall have
11 the right to bring any action related to its granted public trust lands, including an action
12 to abate a public nuisance, as a representative of the beneficiaries.") The State of
13 California entrusted the Port District with responsibility for the Bay, and the Port District
14 is enforcing precisely that authority the Legislature has bestowed upon it.

15 Unlike the plaintiffs in *Juliana*, the Port District does not seek a judicial order
16 requiring or preventing some legislative or executive action.  Instead, the Port District is
17 acting pursuant to its own legislatively-granted powers and authority.  It seeks to mitigate
18 PCB contamination *on the very property* that the Legislature empowered and entrusted it
19 to protect, preserve, and enhance, in order to abate a public nuisance that exposes San
20 Diegans to unhealthy contaminants and limits the public's use and enjoyment of the Bay.
21 Consequently, the standing facts[1] evaluated in *Juliana* are fundamentally different than
22 the Port District's trusteeship over the Bay.

23 **B.  Establishing an abatement fund in this case would require no judicial policy-making whatsoever.**
24

25 Unlike *Juliana*, this case does not require the Court to engage in policy-making.
26 The *Juliana* court determined that the plaintiffs requested relief—an injunction requiring

---

[1] *Juliana* is a standing case.  Though Monsanto filed a motion to dismiss on standing, which was denied, Monsanto did not challenge standing on summary judgment.

the federal government to cease permitting, authorizing, and subsidizing fossil fuel use and to prepare a plan (subject to judicial approval) to draw down emissions—was not redressable by judicial decision because Article III courts do not have the authority to engage in policymaking or to assume the role of the executive or legislative branches. The Ninth Circuit explained that the decisions the plaintiffs asked it to make "range, for example, from determining how much to invest in public transit to how quickly to transition to renewable energy, and plainly require 'competing social, political, and economic forced,' which must be made by the People's 'elected representatives, rather than by federal judges interpreting the basic charter of Government for the entire country.'" [2] *Juliana* at \*8 (*citing Collins v. City of Harbor Heights*, 503 U.S. 115, 128-29. The Ninth Circuit found that the relief the *Juliana* plaintiffs sought would have required the trial court to supplant its own judgment on these issues for that of the legislature and the executive branch. Those types of public policy decisions and intra-government conflicts simply do not exist in this case.

To resolve this case, this Court would not engage in evaluating the propriety of any potential remedial efforts. To be clear, the Port District intends to offer evidence of accepted remediation approaches available for addressing PCB contamination in the Bay for the sole purpose of providing information about the scope of the problem and the extent of funds needed for abatement. Just as was done in *ConAgra*, this evidence is provided to assist the Court in one task: determining the appropriate deposits into the abatement fund. Unless the Court requests it, the Port District does not plan to offer definitive conclusions as to what should or should not be done in the Bay to abate the PCB nuisance. Just like the evidence provided in *ConAgra*, the evidence the Port District intends to offer will consist of potential cost estimates to determine a proper funding level for the abatement fund. This is exactly what the court in ConAgra required and it did not

---

[2] The *Juliana* plaintiffs brought claims under the Due Process Clause and guarantee of equal protection under the Fifth Amendment, the equal protection clause of the Fifth Amendment, the Ninth Amendment, and the public trust doctrine.

require the court to engage in policy-making. *People v. ConAgra Grocery Products Co.,* 17 Cal. App. 5th 51, 133 (2017) ("While the trial court did require defendants to make deposits into the account to provide the funds necessary to carry out the abatement, the court's estimate of the amount that would be necessary for that purpose was just that: an estimate.") Though the *ConAgra* court relied on such estimates to make determinations as to the amount of the abatement fund, it made no policy decisions about what remedial measures would be ultimately utilized. Likewise, this Court will not be required to make any policy decisions whatsoever about the nature of remedial efforts undertaken in the Bay. The Court will make only legal determinations as to Monsanto's liability to abate the nuisance.

Functionally, an abatement fund could have any combination of the following components, none of which would conflict with *Juliana*:

- As a governmental entity with legislatively-granted authority to abate a nuisance in the Bay, this Court's judgment could allow the Port District to utilize abatement funds at its discretion. To the extent any additional regulatory approvals were required for the Port District to take any particular action, such approvals would be obtained.[3] Without approval and use of funds within specified timeframes, the funds would be returned to Monsanto.

- Alternatively, the Court could condition expenditure of abatement funds for remedial actions on either (a) Regional Board approval of plans requested by the Port District and/or (b) a Regional Board order requiring use of abatement funds for a particular abatement action or actions. Interested parties would retain whatever rights they may or may not have to participate in Regional Board proceedings.

- Regardless of the framework of the abatement fund, the Court could order that

---

[3] There is no question that the entity empowered to protect, preserve, and enhance the Bay can obtain permits or approvals needed to carry out its mandate to abate. *Atlantic Richfield* [Amended Judgment] 2014 WL 1385821 at *2. ("The Jurisdictions, through their existing lead control programs, will administer the Plan consistent with all applicable State, Federal and local government regulations."

Monsanto fund it in advance, partially in advance, upon approval of remedial action by the Regional Board, or upon expenditure of costs as they are incurred by the Port District.

All of these options are consistent with the remedy in *ConAgra*, which required liable manufacturers and promoters of lead paint to abate a public nuisance by contributing to a fund to be administered by the Cities and their existing programs[4] to prioritize, inspect, design and carry out remediation and conduct community education and outreach. *People v. Atlantic Richfield* [Amended Judgment], 2014 WL 1385821 at *6 (Cal. Super. 2014); *People v. Atlantic Richfield* [Amended Statement of Decision], 2014 WL 1385823 at *49, 60-61 (Cal. Super. 2014). None of the options involves this Court making decisions about how the Bay would be remediated. Those decisions would be made by governmental entities that the State of California, through laws enacted by the legislative and executive branches, entrusted with that authority—namely, the Port District and the Regional Board.

Finally, an abatement fund, though properly utilized by the court in *ConAgra*, is not the only tool available to this Court to require abatement of the nuisance. This Court can enter a declaratory judgment holding Monsanto liable for future costs incurred by the Port District remediating PCBs, or order Monsanto liable for orders to abate the nuisance issued by the Regional Board.

### C. The Port District's requested remedy does not require any post-judgment Court involvement in the abatement of the nuisance.

Despite Monsanto's suggestion that resolution of this case would require "constant supervision" by this Court for decades, the Port District's requested remedy does not require <u>any</u> post-judgment Court involvement in abatement, let alone the level of

---

[4] *Atlantic Richfield* [Amended Statement of Decision], 2014 WL 1385823 at *54 ("Similarly, it makes no sense to charge the liable defendants with undertaking this task. Monitoring the fund encompassed by the Plan will be accomplished by experienced government employees with control by the Jurisdictions' respective Boards of Supervisors.")

involvement the Ninth Circuit foresaw in *Juliana*. While it certainly could retain jurisdiction to enforce the terms of its judgment, this Court's decision-making role would end with a liability finding and an order establishing an abatement funding mechanism.

## IV. Conclusion

For these reasons, *Juliana* offers no support for Monsanto's motion for summary judgement (abatement), which should be denied.

Respectfully submitted,

Dated: February 10, 2020

By: */s/ Kenneth O. Corley*

**KELLEY DRYE & WARREN LLP**
William J. Jackson (admitted *Pro Hac Vice*)
Texas Bar No. 00784325
Micheal W. Dobbs (admitted *Pro Hac Vice*)
Texas Bar No. 24012533
Kenneth O. Corley (admitted *Pro Hac Vice*)
Texas Bar No. 24048405
Nancy K. Yanochik *(*admitted *Pro Hac Vice*)
Texas Bar No. 01293000
515 Post Oak Blvd., Suite 900
Houston, TX 77027
Telephone: 713-355-5000

**KELLEY DRYE & WARREN LLP**
Andrew W. Homer (SBN 259852)
7825 Fay Ave., Suite 200
La Jolla, CA 92037
Telephone: (858) 795-0426

**SAN DIEGO UNIFIED PORT DISTRICT OFFICE OF THE GENERAL COUNSEL**
Thomas A. Russell, SBN 108607, Gen. Counsel
Ellen F. Gross, SBN 149127, Asst. Gen. Counsel
John N. Carter, SBN 246886, Dep. Gen. Counsel
3165 Pacific Highway
P.O. Box 120488
San Diego, CA 92112-0488

**ATTORNEYS FOR THE SAN DIEGO UNIFIED PORT DISTRICT**

**CERTIFICATE OF SERVICE**

I hereby certify that on February 10, 2020, I electronically filed the foregoing PLAINTIFF SAN DIEGO UNIFIED PORT DISTRICT'S RESPONSE TO DEFENDANTS' NOTICE OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT (ABATEMENT) through this Court's electronic filing system (ECF) and served through the Notice of Electronic Filing (NEF) hyperlink, to the parties and/or counsel who are registered CM/ECF Users set forth in the service list obtained from this Court on the Electronic Mail Notice List.

Dated: February 10, 2020                    By:   */s/ Kenneth O. Corley*